# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2849

MAMAN D. BIO,

*Plaintiff-Appellant,*

v.

FEDERAL EXPRESS CORPORATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-010-LJM-WTL—**Larry J. McKinney**, *Chief Judge.*

_____

ARGUED JANUARY 12, 2005—DECIDED SEPTEMBER 16, 2005

_____

Before FLAUM, *Chief Judge*, and EASTERBROOK and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Maman D. Bio sued his former employer, Federal Express Corporation (FedEx), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, claiming that it took disciplinary action against him and terminated his employment for racially discriminatory reasons. The district court granted FedEx's motion for summary judgment, finding that Bio had failed to submit evidence showing that a similarly situated employee received more favorable treatment. We affirm.

# I

Bio began working for FedEx in 1994 as a Material Handler at FedEx's Hub facility in Indianapolis, Indiana. Around November 1996, he was promoted to the position of Engineering Specialist in the Engineering Department, where he was responsible for preparing and monitoring long-range operational plans, planning for and assisting with the implementation of required changes in operations, and providing engineering support to the operating and corporate departments of the Indianapolis Hub.

FedEx has a Performance Improvement Policy that guides its supervisors in addressing employees' performance problems. The "tools" (as the Policy describes them) include verbal counseling, written counseling, and performance reminders. When evaluating a performance issue, a supervisor may take an employee's past performance into account to determine which tool is appropriate. The Policy describes a performance reminder as "a written disciplinary notification that is normally warranted when: there is a severe performance problem or the same or similar performance problem has occurred on at least [two] or more occasions within the last 12 months." It provides that an employee can be terminated if she receives three "performance reminders" or disciplinary notifications within a twelve-month period. Verbal counseling and written counseling do not count toward the three disciplinary notifications required before termination. FedEx also has an Acceptable Conduct Policy, which states that employees can be disciplined or discharged for misconduct such as insubordination, refusal to follow instructions, or not performing work in a timely manner without valid reason. Bio received copies of both policies.

Bio's employment history was not problem-free. Over time, he received oral and written counseling on numerous occasions about difficulties he had in performing his duties

as an Engineering Specialist. In September 1999, Bio was counseled about erroneous volume entries, calculation errors, failure to meet deadlines, and failure to communicate with internal customers. He was counseled in writing on November 11, 1999, for failing to complete a volume projections assignment on time and for failing to give timely notice that he was unable to meet the deadline. In December 2000 and January 2001, Bio was counseled about deficiencies in two operational plans and a project memo he published. None of these incidents resulted in the issuance of a performance reminder.

Bio received his first performance reminder on March 16, 2001, for poor quality of work related to a plan that he published. At first he contested the performance reminder, but later he withdrew his complaint. On May 14, 2001, Bio received an annual performance evaluation stating that he had problems with prioritizing and completing tasks and with following through on assignments without prompting. On August 29, Bio received his second performance reminder, this time for failing to complete an assignment from the previous night. At the beginning of his shift on August 28, Bio's supervisors asked him to revise the volume projections of the September 2001 Monthly Operating Plan. He was instructed to post the revised file on the facility's computer network and then notify the Operations Control Room that he had completed this task before the end of his shift. Bio's supervisor, Robin Damm, testified that she went to Bio's cubicle at approximately 4:30 a.m. and saw that he had cleaned up his work area and left for the night. She then looked for Bio's revisions on the computer network but did not find the updated files that Bio was supposed to complete.

Bio tells a different story. He claims that the September 2001 Plan was originally prepared by another Engineering Specialist, Ken Scoda, and that his assignment on the night of August 28 was to help Scoda by correcting the errors in

the file. While Bio does not contest that he was required to post the updated file on the network and to notify the Control Room afterwards, neither of which he did, he maintains that he completed the assignment and left a voicemail message to that effect with the Control Room before he left work that night.

The next night, Damm told Bio that she was unable to find the updated volume reports and asked why he had not completed his assignment. Bio responded that he had given her a printed copy of the updated file the night before and that he had left a voicemail message as well as a hard copy with the Control Room. According to FedEx, neither Damm nor anyone else had seen these alleged updates, either on the network or in printed form. After reviewing Bio's employment file and checking with her supervisor, Joseph Stephens, as well as a Human Resources representative, Damm issued the August 29 performance reminder for his failure to complete the assignment. Because Bio had failed to show improvement over the course of his employment, Damm also gave him a "Decision Day" in accordance with FedEx's policies. A Decision Day is a day off granted to an employee so that he can determine whether he desires to remain employed at the company. If the employee decides to continue employment, he is required to prepare a Personal Performance Agreement demonstrating his commitment to improve his performance. Damm warned Bio that FedEx would consider a failure on his part to develop and produce a Personal Performance Agreement to be a violation of the Acceptable Conduct Policy and a voluntary resignation of employment.

When Bio returned to work the next evening, he told Damm that he wanted to remain employed at FedEx but that he refused to prepare a Personal Performance Agreement because he believed that the August 29 performance reminder was unwarranted. Later that night, Damm issued a Warning Letter to Bio for failing to prepare the required

Personal Performance Agreement. FedEx fired Bio on September 5, 2001, because he had received three disciplinary notifications within a twelve-month period: the two performance reminders on March 16, 2001, and August 29, 2001, and the Warning Letter on August 31, 2001.

Four days later, Bio filed an internal complaint stating his disagreement with the last two disciplinary actions taken against him, claiming that he had been treated unfairly. Notably, he did not mention racial discrimination in this complaint. On June 3, 2002, Bio filed charges of racial discrimination against FedEx with the Equal Employment Opportunity Commission (EEOC) and the Indiana Civil Rights Commission. After he received his Notice of Right to Sue from the EEOC, he filed this action in district court on January 3, 2003, complaining about both the disciplinary actions and the firing.

At the end of discovery, FedEx moved for summary judgment, arguing that Bio had failed to identify a similarly situated white employee who received more favorable treatment and that Bio's performance did not meet its legitimate expectations. It also contended that it had legitimate reasons for disciplining and terminating Bio. In opposition to FedEx's motion, Bio argued that he had established a *prima facie* case and that there was a sufficient dispute of material fact to place the issue of pretext before the jury. The district court granted summary judgment in favor of FedEx on the ground that Bio had not identified a similarly situated employee who was treated more favorably. Bio now appeals.

## II

We review a district court's grant of summary judgment *de novo*, construing all facts and inferences in the light most favorable to the party opposing the motion. See *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir.

2005). We will affirm if the summary judgment record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See *Celotex*, 477 U.S. at 322.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. To prevail on his race discrimination claim under Title VII or § 1981, Bio must either show direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Gonzales v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Lacking direct evidence of discrimination, Bio has elected to proceed under the indirect method.

To establish a *prima facie* case of discrimination under this approach, a plaintiff must present evidence that, if believed by the trier of fact, would show: (1) he was a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who are in a different class. *Brummett*, 414 F.3d at 692. If a plaintiff meets this burden, the defendant has the opportunity to

articulate a legitimate nondiscriminatory reason for its action; if it does so, the burden shifts back to the plaintiff to show that this reason is pretextual. *Id.* The failure to establish any one of the initial four elements defeats a discrimination claim.

Bio, who is African American, is a member of a protected class. He bases his discrimination claim on three adverse employment actions taken against him: the August 29 performance reminder, the August 31 Warning Letter, and the September 5 discharge. Because the district court found that Bio could not point to a similarly situated non-African American employee who was more favorably treated, we turn first to this inquiry.

A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications —provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Bio failed to identify a similarly situated employee with respect to the August 31 Warning Letter. Bio received this disciplinary letter for insubordination and not merely for poor quality of work: he refused to comply with FedEx's requirement that he submit a Personal Performance Agreement as a condition of continuing his employment with the company. It is no sign of racial discrimination on FedEx's part if it decides to request such a document from an employee who fails to show improvement over the course of his employment. Moreover, Bio does not dispute that he

was counseled on numerous occasions about his failure to complete assignments on time and inaccuracies in his work. Bio has not identified another employee who was also required to prepare a Personal Performance Agreement to remain on the job, flatly refused to do so, and evaded disciplinary action. Thus, he cannot prevail on his claim with respect to this disciplinary action. See *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Putting the August 31 letter to one side, Bio argues that Ken Scoda, a white Engineering Specialist at the same facility, is the similarly situated employee whose experiences at FedEx should be compared to Bio's. He contends that Scoda received more favorable treatment because FedEx did not issue any performance reminders against him from April through August 2001 even though it had received numerous complaints regarding inaccuracies and other problems in Scoda's work. Although both Scoda and Bio held the same position and reported to the same supervisor, the record cannot support the conclusion that they were directly comparable. As the district court pointed out, there was a considerable gap in experience between the two men. Bio had been working as an Engineering Specialist for over four years when he was disciplined for the August 28 incident. Scoda, on the other hand, was a novice. He had been on the job only since December 2000, and the performance complaints to which Bio alludes occurred within the first eight months of his employment, while he was still learning how to perform his duties. This substantial gap in experience precludes a finding that the two were similarly situated. See *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004) (identifying work experience as a relevant consideration); *Patterson*, 281 F.3d at 680 (same).

Bio argues that the experience gap between the two men is irrelevant because after six months on the job, Scoda was held to the same standards as all other Engineering

Specialists. He points to a June 22, 2001, e-mail in which Stephens, in response to Scoda's continuing deficiencies in job performance, wrote: "[T]he HONEYMOON IS OVER for Mr. Scoda," and instructed Damm to communicate to Scoda that his repeated errors would no longer be tolerated and to begin documenting Scoda's performance lapses. Damm testified that she interpreted this memo to mean that Scoda's training period was over and that he had enough training to handle his job responsibilities. Bio argues that these comments are enough to present a genuine dispute as to whether Scoda and Bio were held to the same standards and thus, were similarly situated employees.

Bio reads too much into these comments. Even if the end of Scoda's training period meant that he would henceforth be subject to the same standards as a four-year veteran on the job, Bio still cannot show that Scoda received more favorable treatment. While it is true that Damm received complaints regarding Scoda's performance between June 22 and August 29 and did not issue any performance reminders for these deficiencies, Bio also received numerous performance complaints against him before he was issued the first performance reminder. In fact, Scoda received his first performance reminder on September 11, 2001—three months after his training period had ended, and nine months after he started working as an Engineering Specialist. Bio, on the other hand, did not receive his first performance reminder until March 16, 2001, more than four years after his promotion to the position, notwithstanding the fact that his supervisors had received numerous complaints concerning his job performance during this time. This evidence tends to indicate that Bio in fact received more favorable treatment than Scoda, because his deficiencies were tolerated much longer than Scoda's.

Along the same lines, Bio cannot show that he was treated less favorably than Scoda when he was terminated after receiving three formal disciplinary letters within a

twelve-month period. Scoda was likewise terminated in February 2002 after he received his third performance reminder. In this regard, Bio and Scoda were treated the same.

## III

   Because Bio cannot show that a similarly situated employee was treated more favorably than he was, he cannot prevail under either theory of racial discrimination he has presented. We therefore AFFIRM the judgment of the district court.

A true Copy:

        Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*