In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3504

BETTY WARREN,

*Plaintiff-Appellant,*

*v.*

SOLO CUP COMPANY,
a foreign corporation,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 2270—**Michael P. McCuskey**, *Chief Judge.*

———————

ARGUED FEBRUARY 12, 2007—DECIDED FEBRUARY 20, 2008

———————

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Betty Warren alleges her employer, Solo Cup Company, compensated her male coworker at a higher hourly rate based on his gender in violation of the Equal Pay Act and Title VII. The district court granted summary judgment in favor of the employer. Warren appealed and we affirm.

## I. Background

In 1999 Betty Warren began working at Solo Cup Company ("Solo"), a manufacturer of disposable cups and

plates, as a "packer," earning $6.04 per hour. In 2000 Warren switched positions and became a "tool crib attendant," earning $6.31 per hour. She received three raises over the next two years and eventually reached an hourly wage of $7.52. When Warren began working in the tool crib, Solo tracked its parts using manual inventories recorded on a written card system. Eventually Solo computerized its tool crib, using a software system to track and inventory parts. This modernization made it important for tool crib attendants to possess computer skills.

In December 2002 Solo contemplated hiring a tool crib attendant to cover the third shift so the tool crib would be continually staffed. Having recently decided to lay off all of its full- and part-time security guards, Solo decided to offer the new tool crib position to Don Lorenz, one of its security guards. As a security guard, Lorenz started at $6.50 per hour and worked his way up to $7.43. Solo offered him a raise with the new position, to $7.75 per hour. Tony Peyton, the head of Solo's human resources department, testified that Lorenz's raise was based on his "computer skills and his potential"; Lorenz holds a bachelor's degree in anthropology and two master's degrees in education and urban planning, respectively.

Warren, who has a high school diploma, was upset when she learned Lorenz was earning more money than she was for similar work in the tool crib. She went to her supervisor to discuss the discrepancy, and her supervisor explained there was a company book that dictated the starting wage for tool crib attendants. When Warren protested that she "knew more than Lorenz," Warren was fired. At the time Solo's explanation for her firing was that she was "generating too many orders," which appar-

ently is not a good thing for a tool crib attendant.[1] In the context of this litigation, deposition testimony revealed that Warren was resistant to working with computers, and Warren herself admitted to being "kind of mediocre" with computers.[2]

Warren filed a three-count complaint in federal district court, alleging she was paid unequal wages due to her gender in violation of both Title VII, 42 U.S.C. § 2000e-2, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and that her termination violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 601. Warren later abandoned her FMLA claim. Solo moved for summary judgment and prevailed, and Warren appealed.[3]

## II. Analysis

We review the district court's grant of summary judgment de novo, "construing all facts, and drawing all reasonable inferences from those facts" in favor of Warren.

---

[1] Solo belatedly offered a business-related explanation for the termination—that one tool crib position was being eliminated—but because we construe all facts in the light most favorable to Warren, we disregard it.

[2] One of Warren's supervisors, Nancy Driggers, testified that Warren "just didn't want to work on a computer" and "just really didn't want to deal with the computer." Driggers said Warren "would rather do almost any of the other jobs other than work the computer." Driggers also indicated Warren "did not have an easy time working on the computer."

[3] In response to Solo's motion for summary judgment, Warren attempted to pursue a new claim: that her termination violated Title VII. The district court correctly concluded that Warren had waived this claim by failing to raise it in her complaint. Accordingly, Warren's termination is not at issue in this appeal; we address only her unequal pay claims.

*Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]o avoid summary judgment, the nonmovant bears the burden of setting forth 'specific facts showing that there is a genuine issue for trial.'" *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 2005) (quoting FED. R. CIV. P. 56(e)).

## A. EPA Claim

Warren first argues that Solo violated the EPA because her hourly rate as a crib attendant was less than Lorenz's. The EPA prohibits employers from paying employees different wages based on gender. 29 U.S.C. § 206(d); *Varner v. Ill. State Univ.*, 226 F.3d 927, 932 (7th Cir. 2000). "To establish a prima facie case of wage discrimination under the EPA, [Warren] must show," by a preponderance of the evidence, that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). No proof of discriminatory intent is required. *Id.*; *see also Varner*, 226 F.3d at 932.

We assume, arguendo, that Warren established a prima facie case, so the burden shifts to Solo "to establish one of four statutory defenses." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 697 (7th Cir. 2006); *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)). The statutory defenses kick in if the difference in pay is attributed to "(i) a seniority system; (ii) a merit system; (iii) a system

which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d). The fourth exception is a "broad, 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon*, 882 F.2d at 1211.

So "[i]n effect, the provisions of the Equal Pay Act establish a rebuttable presumption of sex discrimination such that once an employee has demonstrated that an employer pays members of one sex more than members of the opposite sex, the burden shifts to the employer to offer a gender neutral justification for that wage differential." *Varner*, 226 F.3d at 932. The justification need not be a "good reason," but merely a gender-neutral one. *Wernsing v. Dep't of Human Servs.*, 427 F.3d 466, 468 (7th Cir. 2005). The justification "must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability." *Fallon*, 882 F.2d at 1211.

Solo has carried its burden. The company established a bona fide, gender-neutral rationale for the discrepancy in pay: Lorenz is more skilled in using computers than Warren and has a bachelor's and two master's degrees. "Under the EPA, differences in education and experience may be considered factors other than sex." *Merillat*, 470 F.3d at 697 (citing *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 702 (7th Cir. 2003)). Warren has a high school diploma and admitted her computer skills were deficient. Although Lorenz's bachelor's and master's degrees do not include a specific emphasis on computers, the evidence is undisputed that he knew more about computers than Warren. Moreover, the record establishes that at times Warren went out of her way to avoid using a computer at work because it was unfamiliar to her. Solo's

motion for summary judgment on Warren's EPA claim was
properly granted.

## B. Title VII Claim

Warren next argues Solo paid her a lower hourly rate
than Lorenz in violation of Title VII. She proceeds under
the indirect method set forth in *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792 (1973), so the initial burden is
on Warren to establish a prima facie case of discrimina-
tion. This requires Warren to show that (1) she is a
member of a protected class; (2) she was performing her
job to Solo's expectations; (3) she suffered an adverse
employment action; and (4) she was treated less favorably
than similarly situated employees outside of the pro-
tected class. *Id.*

Warren failed to establish a prima facie case because
she is not similarly situated to Lorenz.[4] An employee is

---

[4] In her appellate briefs, Warren contends the district court
ignored evidence regarding another Solo female employee,
Sandra Weir. Weir worked as a security guard, like Lorenz, and
was laid off at the same time Lorenz was offered the tool crib
attendant position. Warren focuses on the fact that Weir had
taken computer classes yet was not considered for the tool crib
position that went to Lorenz. Warren poses this question: "If the
reason for starting Lorenz at a wage rate higher than the
Plaintiff was because of his superior computer skills and not
because of his sex, why did . . . [Solo] not even consider the
credentials of Weir, despite her repeated inquiries about the
job?" We do not understand the import of this inquiry; Weir's
alleged computer experience has nothing to do with the dis-
crepancy in Warren's and Lorenz's hourly wage. Warren does not
allege that Solo discriminated against women by not hiring
them for tool crib positions. Warren's termination is not at issue
in this appeal; only Warren's claims for unequal pay under
(continued...)

similarly situated if the employee is "comparable to the plaintiff in all *material* respects." *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846-47 (7th Cir. 2006). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications— provided the employer considered these latter factors in making the personnel decision.'" *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)).

The fourth factor is the focus of this case: Warren and Lorenz have very different educational backgrounds, experiences, and qualifications. Warren has a high school diploma; Lorenz has a bachelor's and two master's degrees. Moreover, Lorenz's computer skills are superior to Warren's. Warren maintains Lorenz's advanced degrees and computer skills are irrelevant because the tool crib job description requires neither. But the tool crib job description is not conclusive on this question. Employers are permitted to compensate employees differently based on skills that are not specifically required in a given job description so long as the employer considers those skills when making the compensation decision. *See Bio*, 424 F.3d at 597.

Lorenz and Warren are not materially comparable in education, experience, and computer aptitude, and Solo

---

[4] (...continued)
the EPA and Title VII are properly before the court. We do not see how Solo's failure to consider Weir for the tool crib position has any relevance to the pay discrepancy between Lorenz and Warren.

considered these differences when deciding to pay Lorenz a higher hourly rate. Accordingly, Solo's motion for summary judgment on Warren's Title VII discriminatory pay claim was properly granted.

The judgment of the district court is AFFIRMED.

ROVNER, *Circuit Judge*, dissenting in part.[1] In defense of its decision to pay Lorenz more than Warren for doing the same work, Solo has focused almost entirely on one factor that distinguishes the two employees: Lorenz's computer skills. In the course of acquiring his bachelor's degree and two master's degrees, Lorenz had been trained in how to use computers and was comfortable doing so. Warren, by contrast, had no training related to computers and described her proficiency in that regard as "kind of mediocre." R. 11-3, Warren Dep. at 51. Because the crib attendant position involved the use of a computer, Lorenz's greater facility with computer work amounts to a facially legitimate, non-discriminatory reason to pay him more than Warren. If the record before us were limited to the comparative skills of Lorenz and Warren, that would be enough to sustain the entry of summary judgment against Warren on her disparate pay claims.

However, Solo's action (or rather, its inaction) vis-à-vis another computer-savvy employee, Sandra Weir, calls

---

[1] I join the court's opinion in one respect: I agree that Warren did not timely assert, and therefore waived, a claim under Title VII for discriminatory discharge. *Ante* at 3 n.3.

into question the veracity of its rationale for paying Lorenz more than Warren. Solo has articulated the same reason for hiring Lorenz into the crib attendant position as it has for deciding to pay him more: his computer expertise. But, as it turns out, Lorenz was not the only individual interested in the position who had such expertise. Sandra Weir was a security guard at Solo who, like Lorenz, lost that job when the company decided to outsource its security. Weir, like Lorenz, had computer training and experience: she had taken a college course in computers several years earlier, and she had held two prior jobs in which she used computers to track parts inventories, which is exactly what the crib attendant position involved. Moreover, in the months proceeding the decision to outsource the security positions, Weir had told Holzhauer, the individual responsible for the tool crib, and Peyton, the manager of Human Resources, that she was interested in a crib attendant position. This was in contrast to Lorenz, who had never approached anyone in the company about that position. Weir had also told Holzhauer and Peyton about her experience with computers, so they were on notice of that experience. Yet, despite Weir's expressed interest in position, the company never interviewed her for or contacted her about the position; the company did not even follow up with Weir about the extent of her computer-related training and experience. The job was offered only to Lorenz. Indeed, after Weir learned that she was losing her job to outsourcing, she again spoke with Peyton about a position in the tool crib, and he told her there was no opening. If, as Solo has represented, the company's prime focus in selecting someone for the position was on computer expertise, then its disregard of Weir as a candidate is, to say the least, curious.

My colleagues profess to be mystified as to the import of Weir and her credentials, *ante* at 6-7 n.4, but to me the

relevance is obvious. I understand, of course, that Weir is not a party to this suit and that Solo is not being sued for its decision to place Lorenz in the crib attendant position. Yet, even if the facts concerning the company's decision to pass over Weir in favor of Lorenz for the crib attendant position are viewed as "other acts" evidence, *see* Fed. R. Evid. 404(b), it is well-settled that such evidence may be relevant and admissible to establish an employer's discriminatory intent or to show pretext. *Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003) (citing *Vance v. S. Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 n.5 (11th Cir. 1989)); *Molnar v. Booth*, 229 F.3d 593, 603-04 (7th Cir. 2000); *see also Vance v. Union Planters Corp.*, 209 F.3d 438, 445 n. 8 (5th Cir. 2000) (coll. cases). To my mind, however, this is not "other acts" evidence at all, but rather evidence that directly bears on the veracity of the company's stated reason for paying Lorenz more to work in the tool crib than it paid Warren. The company's stated rationale for putting him in that position and its justification for paying him more for that work are one and the same: his computer literacy. This makes the process by which Solo selected Lorenz for the job pertinent. If, as Solo represents, its foremost concern in filling the new position in the tool crib was computer literacy, one would think that it would not have brushed aside Weir as a candidate for that position. Both Weir and Lorenz had computer expertise, both were security guards who lost their positions to outsourcing, and Weir, in contrast to Lorenz, had affirmatively expressed her interest in the crib attendant position. There may have been distinctions between the two that made Lorenz the more attractive candidate, but if so they are not evident from the record before us. The relevant point is that the company offered the job to Lorenz without even approaching Weir and without any inquiry into their relative expertise. Faced with that evidence, a

reasonable factfinder could think that the company's proffered reason for putting Lorenz into the tool crib position, and for paying Lorenz more than Warren for that job, was pretextual.

Solo has hinted at a second reason for compensating Lorenz at a higher rate than Warren—his higher level of education. Why Lorenz's multiple degrees are relevant to a position in the tool crib is not apparent to me. The areas in which Lorenz had obtained his degrees had nothing to do with the responsibilities of the position. The fact is, Lorenz's three degrees rendered him vastly over-qualified for a position that required only a high school degree or the equivalent. But for our purposes, the more relevant point is that Solo has not established that Lorenz's overall level of education was an independent reason for its decision to pay him more than Warren. Lorenz's computer expertise has always been the central and dispositive factor Solo has relied on. *See* R. 32, Defendant's Amended Reply in Support of its Motion for Summary Judgment at 13 ¶ 33 Response (describing "computer skills and computer work" as "the critical inquiry" regarding the pay disparity between Lorenz and Warren); *id.* at 33 ("The focal point is the computer component to the tool crib position in December 2002."); *see also* R. 11-4, Peyton Dep. at 74 ("[Lorenz's] computer skills led us to believe that he was the best candidate."); R. 11-6, Holzhauer Dep. at 39 ("the person I was looking for needed to be very computer-literate to be able to handle the work that was required"). His substantial post-secondary education simply explained how Lorenz came to possess that expertise. *See* R. 11, Defendant's Memorandum in Support of its Motion for Summary Judgment at 13 ("During his educational training, Lorenz stated he took computer courses that Solo believed made him uniquely qualified for a tool crib attendant position following implementation of the computer component of

the MP2 Inventory Control Program."). Solo has, it is true, made vague allusions to Lorenz's "background" and "potential" as reasons for paying him more than Warren. R. 11-4, Peyton Dep. at 44. Perhaps Solo believed that Lorenz's multiple degrees made him an attractive prospect for future promotion to more responsible positions within the company. If so, however, the company has not adequately developed this as a second and independent reason for deciding to pay him more than Warren.

The evidence Warren has proffered as to Weir suffices to establish a question of fact as to the veracity of Solo's rationale for paying Lorenz more than Warren for doing the same work and as to whether Warren was similarly situated to Lorenz in material respects. For that reason, I would reverse the grant of summary judgment as to Warren's disparate claims under the Equal Pay Act and Title VII.

A true Copy:

      Teste:

              _____
              *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*