NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2009
Decided January 11, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1066

| | |
|---|---|
| DEBORAH NUZZI, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 07-CV-2127 |
| | |
| BOURBONNAIS ELEMENTARY | Michael P. McCuskey, |
| SCHOOL DISTRICT and | *Chief Judge.* |
| ROB RODEWALD, | |
| *Defendants-Appellees.* | |

## O R D E R

This employment-discrimination case is long on speculation but short on evidence. Deborah Nuzzi was the principal at a kindergarten and preschool in Bourbonnais, Illinois, from 2004 until 2006. After she resigned that job to teach elsewhere, Nuzzi sued the school district and Rob Rodewald, a school-board member. As relevant here, Nuzzi alleged that she was sexually harassed by Rodewald and then retaliated against when she complained about his conduct. She also alleged that she was paid less than male principals in the district. Nuzzi claimed that the defendants' actions violated her rights under Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment, and the

Equal Pay Act.  The district court granted summary judgment for the defendants, and we affirm that decision.

At summary judgment the district court was presented with Nuzzi's testimony by deposition and affidavit.  The court also received deposition testimony from Rodewald and other district officials, as well as a letter from the district superintendent and a chart comparing the pay of principals in the district.  Yet as Nuzzi's lawyer conceded at oral argument, none of this evidence reveals overt sexual or sexist conduct by Rodewald.  What the evidence shows, counsel suggested, is that Nuzzi was "stalked" by Rodewald.  But that was not Nuzzi's theory in the district court, and this illicit characterization exaggerates the record.  The evidence at summary judgment, when viewed in the light most favorable to Nuzzi, at most establishes a series of odd encounters between Rodewald and Nuzzi, not a pattern of sexual harassment.

Nuzzi started working for the school district in July 2004.  More than a year later, in the fall of 2005, she began to suspect that Rodewald was purposefully sitting too close to her at business meetings and staring at the length of her body.  At one meeting Rodewald patted her shoulder, which she assumed he would not have done to a male, and after another meeting he "cornered" her and struck up a conversation in a dark parking lot.  (The subject of the conversation is not in the record, and Nuzzi has never asserted that Rodewald said anything inappropriate.)  Nuzzi also suspected that Rodewald was trying to earn her affection when he supported her husband's candidacy for the district superintendency.  After another candidate was selected for the position, Rodewald saw Nuzzi and addressed her as "Deb" rather than "Mrs. Nuzzi."  Then two days later he approached her and asked, "You and me, how are we?"  He reached toward her as if to pat her shoulder or back and said that he didn't know how she felt about her husband's failure to win the superintendent position.  Nuzzi also claimed that Rodewald visited her school—where his wife also worked—an excessive number of times, but didn't specify how many.

Nuzzi testified that in early April 2006, the outgoing superintendent warned her that she was endangering her employment by her aloof attitude toward school-board members.  Nuzzi interpreted this statement as a threat and responded by telling the superintendent about Rodewald's conduct.  Soon after this meeting, a letter from the superintendent informed Nuzzi that Rodewald was being asked to steer clear of her, but that the conduct she alleged did not rise to the level of sexual harassment.  Nuzzi testified that Rodewald's unannounced visits to her school continued, despite this letter.

As for the alleged pay discrimination, Nuzzi said that she and other female administrators had complained about perceived salary disparities on the basis of sex and were told to leave the district if they were unhappy.  It was undisputed that two principals,

both men, earned more per day than Nuzzi, but they had been employed by the school district for 18 and 6 years longer than Nuzzi. Also, while Nuzzi supervised a staff of 13 certified teachers, one of the higher-paid principals supervised more than 30, and the other, more than 50. Attendance at Nuzzi's school did not exceed 364 students, whereas one of her male counterparts was responsible for 541 students, and the other, 847 students. Moreover, the male principals had full-day elementary or upper-grade students, whereas all but four of Nuzzi's students were half-day preschoolers or kindergartners. Nuzzi produced evidence that she was the only principal with a district-level job responsibility, that of Communications Coordinator. She did not, however, specify what duties that position entailed. During the summer of 2006, Nuzzi left the Bourbonnais district and took a higher-paying job in nearby St. George, Illinois, where her husband was superintendent. Her replacement, who was male, accepted the same salary she had been offered for the upcoming school year.

At summary judgment the district court concluded that even after resolving genuine factual disputes in Nuzzi's favor, Rodewald's conduct had not been severe or pervasive enough to constitute sexual harassment. The court further held that Nuzzi had failed to identify any adverse action that could be considered retaliation for complaining of sexual harassment. Finally, the court concluded that Nuzzi had not provided evidence sufficient to support her claim of pay discrimination in that she never pointed to any man who had substantially similar work responsibilities but received greater pay.

On appeal Nuzzi asserts that the district court ignored key facts and improperly drew inferences against her. We disagree. The district court properly concluded that as a matter of law, Nuzzi never made out a case on any of the theories she presented. Nuzzi's sexual-harassment claim required evidence of harassment that is objectively severe or pervasive. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Based on this standard, we have affirmed summary judgment even where the plaintiff has provided evidence of sexually charged words and gestures, *see, e.g., Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965 (7th Cir. 2004); *Rogers v. City of Chicago*, 320 F.3d 748 (7th Cir. 2003); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976 (7th Cir. 2000); *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998), but here, Nuzzi's evidence reveals no sexual or sexist words or conduct at all. Rodewald's exaggerated staring at a board meeting, which could be interpreted as sexually motivated, falls far below the severity required for a cognizable sexual-harassment claim. We agree with the district court that the defendants were entitled to summary judgment on this claim.

Nuzzi's retaliation claim fails, too, because no materially adverse action was taken against her for reporting her allegations. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007). Nuzzi contends that she was constructively discharged by the

school district's toleration of Rodewald's "harassment," but Rodewald's conduct did not constitute harassment. *See McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004). And even if the outgoing superintendent's April 2006 statement can fairly be called a threat, the encounter happened *before* Nuzzi voiced her concerns about Rodewald.

Nuzzi's equal-pay claims under Title VII and the Equal Pay Act are also meritless because her supervisory responsibilities differed substantially from those of the male principals she identifies as comparators. To establish a prima facie case under Title VII, Nuzzi needed to show that she was paid less than some man similarly situated in all material respects. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008)*; Cullen v. Ind. Univ. Bd. of Tr.*, 338 F.3d 693, 704 (7th Cir. 2003). A comparable showing—that she was paid less than some man with substantially similar responsibilities—was also required by the Equal Pay Act. *See* 29 U.S.C. § 206(d); *Warren*, 516 F.3d at 629; *Fallon v. Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989).

Nuzzi made no such showing; she demonstrated only that she received less pay per diem than two male principals with greater supervisory responsibilities. Nuzzi points to her district-wide responsibility as a Communications Coordinator, but she did not show what that position entailed or how it could trump the obvious disparity between her day-to-day duties and those of the higher-paid male principals. Nuzzi never explained why it should matter that her less-experienced replacement was paid the same salary she had walked away from, nor does she tell us how her complaint to school officials about alleged pay disparities shows any discriminatory intent or unjustified pay disparities.

Finally, Nuzzi's equal-protection claim against the district and Rodewald under 42 U.S.C. § 1983, which appears to rest on her harassment theory, falls away with the other claims.

Accordingly, the judgment of the district court is AFFIRMED.