PER CURIAM:
Jill Blackman appeals the district court’s grant of summary judgment in favor of the Florida Department of Business and Professional Regulation on her claims of gender-based salary discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a); the Florida Civil Rights Act, Fla. Stat. § 760.10; and the Equal Pay Act of 1963, 29 U.S.C. § 206. The district court ruled that Ms. Blackman failed to make out a prima facie case under Title VII or the EPA for all but one of her alleged comparators, and that the DBPR proved legitimate, nondiscriminatory reasons for the challenged pay disparities. Following a review of the record, and with the benefit of oral argument, we affirm.[1]
I
After starting as a typist for the DBPR in 1986, Ms. Blackman worked her way up the organization in the Division of PariMutuel Wagering. In 1998, she earned a bachelor’s degree in political science and a certificate in public administration. Approximately four years later, she was promoted to her first management position in the DPMW as a Senior Management Analyst II.[2]
When her predecessor, Mr. Royal Logan, retired in 2006, Ms. Blackman was promoted to Bureau Chief of Operations. Upon being promoted, she received a 14% raise to a salary of approximately $57,700. See D.E. 18-1 at 18. Soon thereafter, she received a legislatively-mandated 3% raise, bringing her salary to approximately $59,500. Id. In 2007, however, the state stopped providing legislatively-mandated annual raises, and Ms. Blackman’s salary remained static until January of 2012, when she received a 3.4% discretionary salary increase to $61,500. Id.
*909 In July of 2010, Ms. Blackman viewed a public website with state salary information and learned that the DBPR was paying her less than two male DPMW bureau chiefs and one of her male subordinates. Believing that the differences stemmed from gender discrimination, Ms. Blackman submitted a charge of discrimination to the Florida Commission on Human Relations and the Equal Employment Opportunity Commission. After receiving a right to sue letter from the EEOC, she filed a complaint in Florida state court. The DBPR removed the case to federal district court.
Ms. Blackman alleged that she was being paid less than five male employees on the basis of her gender in violation of Title VII, the FCRA, and the EPA: (1) Mr. Logan, the former Chief of Operations and her predecessor; (2) Mr. Steven Kogan, the Chief of Investigations; (3) Mr. Dewayne Baxley, the Chief Auditing Officer; (4) Mr. John Karr, the Regional Program Administrator and her subordinate; and (5) Mr. Joel White, a Special Projects Ad-visor to the DBPR Secretary. The district court granted summary judgment to the DBPR. It concluded that Ms. Blackman failed to establish a prima facie case of discrimination because her male colleagues, other than Mr. Logan, were not proper comparators under Title VII or the EPA due to differences in their job responsibilities and skill sets. In addition, the district court ruled that the DBPR had established legitimate, nondiscriminatory reasons for the pay disparities between Ms. Blackman and her male colleagues, including Mr. Logan.
II
We review de novo a district court’s order granting summary judgment, “viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party.” Vessels v. Atl. Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir.2005). Summary judgment is appropriate where “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(a). “Speculation or conjecture cannot create a genuine issue of material fact, and a mere scintilla of evidence in support of the nonmoving party cannot overcome a motion for summary judgment.” S.E.C. v. Monterosso, 756 F.3d 1326, 1333 (11th Cir.2014) (internal quotation marks omitted).
Ill
We analyze claims under the EPA using a burden-shifting framework similar to that employed in the Title VII context. To establish a prima facie case under the EPA, a plaintiff “must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.” Arrington v. Cobb Cnty., 139 F.3d 865, 876 (11th Cir.1998) (internal quotation marks omitted). Although “the plaintiff need not prove that her job and those of her comparators are identical,] ... the standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.” Mulhall v. Advance Sec., Inc., 19 F.3d 586, 592 (11th Cir.1994) (internal quotation marks and alterations omitted). If the plaintiff establishes a prima facie case, the burden shifts to the employer to prove “by a preponderance of the evidence ... that the [pay] differential is justified by one of four exceptions set forth in the EPA ... ‘(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other *910 than sex.’ ” Irby v. Bittick, 44 F.3d 949, 954 (11th Cir.1995) (quoting 29 U.S.C. § 206(d)(1)). If the employer demonstrates that “the factor of sex provided no basis for the wage differential,” the plaintiff must show that the proffered explanation is either “pretextual or offered as a post-event justification for a gender-based differential.” Id. (internal quotation marks omitted) (emphasis in original).
On appeal, Ms. Blackman argues that the district court erred in granting summary judgment on her EPA claims with respect to Messrs. Baxley, Kogan, and Karr. Our review of the record, however, indicates that the district court did not err in ruling that Ms. Blackman failed to establish a prim a facie case with respect to Messrs. Baxley, Kogan, and Karr. As to Mr. Baxley, even assuming that he was a proper comparator under the EPA — and on this record, we conclude that he was not — the district court did not err in ruling that the DBPR had a legitimate, nondiscriminatory explanation for the salary differential between him and Ms. Blackman, and that Ms. Blackman failed to introduce sufficient evidence to create an issue of material fact as to whether this explanation was pretextual.
Although Ms. Blackman bore the burden of demonstrating that the “jobs at issue are substantially similar,” Arrington, 139 F.3d at 876, aside from an organizational chart showing that Mr. Karr — a DPMW Regional Program Administrator — was her subordinate, she introduced almost no evidence regarding the “skills and qualifications actually needed to perform [Mr. Karr’s] job[ ].” Mulhall, 19 F.3d at 592 (internal quotation marks omitted). Nor did she provide any evidence demonstrating that the actual content of her job and Mr. Karr’s job were substantially similar. See Arrington, 139 F.3d at 876 (“[T]he controlling factor in the court’s assessment of whether two jobs are substantially equal must be actual job content.”). Ms. Black-man merely testified, without providing any specifics, that Mr. Karr “is not required to do the same level of work [nor does he] have the same level of responsibility.” D.E. 20-1 at 76. But such conclu-sory testimony alone is insufficient to create a genuine issue of material fact. See Monterosso, 756 F.3d at 1333 (“Speculation or conjecture cannot create a genuine issue of material faet[.]”). By leaving the district court in the dark regarding the content of Mr. Karr’s position vis-a-vis her position, Ms. Blackman failed to establish a prima facie case under the EPA. This is particularly so given the DBPR’s unrebut-ted evidence that, “[e]ven though Mr. Karr is [subordinate to] Mrs. Blackman in the organizational structure, their duties are not similar.” D.E. 18-1 at 7 (noting as an example that Mr. Karr, unlike Ms. Black-man, “routinely travels to the pari-mutuel facilities in the Southern Region to address personnel issues, scheduling issues, compliance issues, and to meet with track representatives”). And unlike Ms. Black-man, Mr. Karr is responsible for inspecting DBPR facilities to ensure they are adequately maintained and that the animals are treated humanely and according to law. See id. These facts militate against Ms. Blackman’s argument that her job was similar to Mr. Karr’s.[3]
*911 Our dissenting colleague believes that Mr. Karr and Ms. Blackman are appropriate comparators under the EPA in part because Ms. Blackman indirectly supervised the same employees that Mr. Karr did. We respectfully disagree. Police sergeants and police lieutenants do not have substantially similar jobs just because they both supervise patrolmen and patrolwomen — sergeants directly, and lieutenants indirectly.
The dissent also asserts that Mr. Karr and Ms. Blackman had substantially similar jobs because Mr. Karr had the same responsibilities as Ms. Blackman, just on a smaller scale. But, as we explained above, the record establishes that their jobs were different in kind, and not merely degree; and it is the actual job content that controls. See Arrington, 139 F.3d at 876.
Accordingly, we conclude that Ms. Blackman failed to meet her burden of demonstrating that, as to Mr. Karr, the “jobs at issue [were] substantially similar.” Id.
Ms. Blackman similarly failed to introduce sufficient evidence to support a pri-ma facie ease with respect to Mr. Kogan.[4] Ms. Blackman argues that she satisfied her burden by introducing (1) an organizational chart showing the “hierarchical ‘parity[1] between the respective Bureau Chiefs,” (2) testimony from Mr. Kogan demonstrating that he considered Ms. Blackman his “peer,” and (3) an email from Joe Dillmore, DPMW Deputy Director, to the heads of all six DPMW divisions referring to the bureau chiefs as “key staff’ capable of fulfilling director duties. See Appellant’s Br. at 18-20. This evidence, however, does not create a genuine issue of material fact as to the similarity of the actual content of the jobs. Although Mr. Kogan and Ms. Blackman are both bureau chiefs, it is the' “actual job content,” not job titles or job descriptions that is controlling. See Arrington, 139 F.3d at 876. See also Mulhall, 19 F.3d at 592 (“Job titles are a factor for consideration, but are not dispositive.”).
Ms. Blackman does not dispute that Mr. Kogan has investigative skills and that his bureau conducts investigations. She also admits that she does not have Mr. Kogan’s investigative skills. See D.E. 20-1 at 38. Because “investigative knowledge [is] more than an incidental part of [Mr. Ko-gan’s] position” as Chief of Investigations, the district court properly determined that he is not a comparator to Ms. Blackman under the EPA. See Mulhall, 19 F.3d at 593.[5]
As for Mr. Baxley, Ms. Blackman introduced scant evidence to show that his job was substantially similar to her own. In her opposition to the DBPR’s motion for summary judgment, Ms. Blackman attempted to demonstrate that her job as Chief of Operations was substantially similar to the jobs of the other DBPR bureau chiefs, including Mr. Baxley, but pointed only to (1) an organizational chart showing the “hierarchical ‘parity’ between the respective Bureau Chiefs,” (2) testimony *912 from Mr. Kogan demonstrating that he considered Ms. Blackman his “peer,” (3) an email from Mr. Dillmore referring to the bureau chiefs as “key staff,” see D.E. 23 at 8-10, and (4) job descriptions for the Chief of Operations and the Chief of Auditing, see D.E. 23-15, 23-16. And when the district court asked Ms. Blackman’s counsel at the hearing on summary judgment to explain how the jobs were similar, he had trouble doing so. See D.E. 39 at 9-13.
Our dissenting colleague concludes that this evidence is sufficient to establish that Mr. Baxley is an appropriate comparator under the EPA. We again respectfully disagree. As we have noted, our cases require us to examine the “actual job content,” not just job titles and descriptions. Arrington, 139 F.3d at 876. Moreover, Ms. Blackman’s testimony belies her claim that her job was substantially similar to Mr. Baxley’s. When asked why she compared herself to Messrs. Baxley and Ko-gan and Ms. Trabue, Ms. Blackman responded that “we are all chiefs.” D.E. 20-1 at 36. Ms. Blackman further testified that Mr. Baxley, as Chief of Auditing, oversaw auditors and conducted audits, and admitted that experience in conducting audits was a skill set she did not possess. Id. at 38-39. It is difficult to see how Ms. Blackman can argue that each bureau chief has substantially the same job, on the one hand, while on the other hand admitting that each bureau chief possessed a distinct skill set. On this record, we conclude that Ms. Blackman failed to create a genuine issue of material fact with respect to the similarity of the jobs. See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992).
Even assuming that Ms. Blackman raised a genuine issue as to whether Mr. Baxley was a proper comparator under the EPA, the DBPR offered sufficient evidence to show that the differential in pay was based on Mr. Baxley’s “auditing experience, management experience, and his education in accounting and business administration.” D.E. 18-1 at 9.[6] It is undisputed that Mr. Baxley worked in a managerial capacity for the DPMW for 13 years before becoming a bureau chief, far longer than Ms. Blackman. During this time, Mr. Baxley received legislatively-mandated annual raises (which were not gender-based) on a higher base salary than Ms. Black-man. Mr. Baxley, moreover, has two bachelor’s degrees, one in accounting and another in business administration, both of which were relevant to his work as Chief Auditing Officer. Although Ms. Blackman has a single bachelor’s degree in political science, it is unrelated to her position as Chief of Operations. These differences in experience and education between Mr. Baxley and Ms. Blackman sufficiently demonstrate that their salary differential was based on factors other than gender.[7]
Ms. Blackman offered no evidence to create a triable issue that these reasons were pretext for discrimination. See Irby, 44 F.3d at 956 (explaining that “[experience is an acceptable factor other than sex” that may be rebutted by a plaintiff showing that she had “equal or more experience of the same type”). On appeal, Ms. Blackman instead argues that the DBPR waived its gender-neutral reasons by failing to plead them below.
*913 We reject this argument. Because Ms. Blackman was on notice that the DBPR planned to assert legitimate, nondiserimi-natory reasons for its actions, see D.E. 1-1 at 15, the district court did not abuse its discretion in considering the DBPR’s gender-neutral reasons. See Mitchell v. Jefferson Cnty. Bd. of Educ., 936 F.2d 539, 544 (11th Cir.1991). As Ms. Blackman offers no substantive arguments for her contention of pretext on appeal, we affirm the district court’s grant of summary judgment to the DBPR on Ms. Blackman’s EPA claims.
IV
In disparate treatment cases under Title VII based on circumstantial evidence, we usually apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although Title VII has a “relaxed standard of similarity between male and female-occúpied jobs[,]” Miranda, 975 F.2d at 1526, to make out a prima facie case of pay discrimination under Title VII, the plaintiff must show by a preponderance of the evidence that “the employee she identifies as a comparator [is] similarly situated [to the plaintiff] in all relevant respects.” Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (internal quotation marks omitted). “[I]f the plaintiff makes out a prima facie case, the defendant must produce a legitimate, nondiscriminatory reason to explain the challenged action.” Arrington, 139 F.3d at 873. The employer’s burden is “exceedingly light.” Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir.1994) (internal quotation marks omitted). “If [the] defendant meets [its] burden of production, the presumption raised by the prima facie case is rebutted and drops from the case,” unless the plaintiff can “demonstrate that the employer’s legitimate reason was in fact, pretextual.” Mulhall, 19 F.3d at 598 (internal quotation marks omitted).
We affirm the district court’s grant of summary judgment in favor of the DBPR on Ms. Blackman’s Title VII claims with respect to Messrs. Baxley, Kogan, and Karr. As discussed above with respect to her EPA claims, Ms. Blackman failed to create a genuine issue of material fact as to the similarity of her job and the jobs held by Messrs. Baxley, Kogan, and Karr, even under Title VIPs relaxed standard of similarity, because she introduced insufficient evidence concerning the actual content of the jobs held by these individuals. Nor did she introduce any evidence to show that the DBPR’s legitimate, nondiscriminatory reasons for the difference in her salary and Mr. Baxley’s salary were pretexts for discrimination.[8]
We agree with the district court that Mr. Logan, Ms. Blackman’s predecessor as Chief of Operations, was a proper comparator under Title VII. We also agree with the district court, however, that the DBPR provided legitimate, nondiscriminatory explanations for the salary differential between Mr. Logan and Ms. Blackman. First, the record indicates that Mr. Logan, who held a bachelor’s degree in business management and a master’s degree in management and supervision, had better qualifications for the position than Ms. Blackman, who only had a bachelor’s degree in political science. Second, and more importantly, Mr. Logan, unlike Ms. Blackman, benefited from legislatively-mandated annual raises (which were gender-neutral) during his entire 13-year tenure as Chief of Operations. As a result, Mr. Logan, who was making a salary of *914 $52,780 in 2000, was earning $72,000 at the time of his retirement in July of 2006.
' Ms. Blackman concedes that it was not discriminatory for her to make less than Mr. Logan when she first started as Chief of Operations. See D.E. 20-1 at 48. Rather, she argues that her salary in 2012 should have come close to Mr. Logan’s 2006 salary, because his salary increased from $52,780 to $72,000 over the course of six years — approximately the same amount of time that Ms. Blackman held the same position. See Appellant’s Br. at 24. But, as the DBPR correctly argues, Ms. Black-man’s salary would have been closer to Mr. Logan’s salary at retirement if Ms. Black-man had benefited from annual legislatively-mandated raises from 2007 to 2012. Indeed, had Ms. Blackman received these annual pay raises, as Mr. Logan did, she would have been making approximately $71,000 at the time she filed her complaint in 2012 (assuming a 8% annual increase).[9] In short, the salary difference is a function of the annual raises (and compound interest) from which Mr. Logan benefited, and Ms. Blackman did not.
Because Ms. Blackman introduced no evidence to demonstrate that the DBPR’s legitimate, nondiscriminatory reasons for the pay differential between her and Mr. Logan were pretextual, we affirm the district court’s grant of summary judgment in favor of the DBPR on this claim.
Y
For the foregoing reasons, we affirm the district court’s grant of summary judgment in favor of the DBPR on all of Ms. - Blackman’s claims.
AFFIRMED.

. "The Florida Civil Rights Act was patterned after Title VII, and Florida courts have construed the [A]ct in accordance with decisions of federal courts interpreting Title VII.... As such, the district court did not independently analyze [Ms. Blackman's] Florida Civil Rights Act claims, and they will not be independently analyzed in this opinion.” Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n. 1 (11th Cir.2004).

. Although Ms. Blackman testified that she first started supervising others as a Senior Management Analyst II, the record indicates that she may have assumed her first management position as early as 2000 as a Licensing Administrator. See D.E. 18-1 at 5.

. Ms. Blackman's concern with respect to Mr. Karr appears to be that, although he is her subordinate, his salary is higher than hers. When asked at her deposition whether she should be paid the same as Messrs. Baxley and Kogan, Ms. Blackman responded: "Philosophically, yes. But, again, I feel that more importantly an individual who reports directly to me who is not required to do the same level of work or have the same level of responsibility as me should not be making more than me.” D.E. 21-1 at 76. We note *911 that Ms. Blackman was not the only bureau chief being paid less than Mr. Karr. Messrs. Baxley and Kogan — both of whom are males — were also paid less. See D.E. 23-5 at 2, 5-6.

. Our dissenting colleague agrees that Mr. Kogan and Ms. Blackman are not proper comparators under the EPA.

. Implicitly acknowledging the insufficiency of this evidence, Ms. Blackman asserts that Carolynn Trabue, the highest earning DPMW bureau chief, is not a proper comparator under the EPA — despite her “hierarchical parity” with the other bureau chiefs, and despite her inclusion on the “key staff” email from Mr. Dillmore — because of the specific skill set required for her position as Chief of Slots.

. As of July of 2010, Mr. Baxley was earning $62.09 more than Ms. Blackman per pay period. See D.E. 23-5 at 2, 5 (Mr. Baxley was earning $2,349.41 per pay period, and Ms. Blackman was earning $2,287.32 per pay period).

. At the time of his promotion to Chief Auditing Officer, Mr. Baxley received only a 5% raise over his then-current salary. Ms. Black-man, by comparison, received a 14% raise at the time of her promotion to Chief of Operations. See D.E. 18-1 at 18, 25.

. Because she does not advance on appeal any arguments with respect to Mr. White, Ms. Blackman has waived any argument that he was a proper comparator under Title VII.

. We arrive at this estimate using an annual compound interest formula, where the amount of money earned after 6 years of annual 3% raises equals the starting salary of $59,500 multiplied by (1.03)6.

. Florida State University, from which Black-man obtained her degree, offers a certificate in public administration and describes the purpose of its certificate as "providing] a greater degree of specialization in a chosen area.” http://coss.fsu.edu/prospective-students/ undergraduate-minors (last visited Feb. 4, 2015). According to FSU’s website, the pub-lie-administration certificate covers topics including "[a]dministrative law, budgets and finances in managing public affairs, civic and non-profit management, local government administration, emergency management, and public administration in American society.” Id.