NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 138

No. 2014-445

| | |
|---|---|
| Vermont Human Rights Commission, Lynne Silloway, Mary Bertrand and Lisa DeBlois | Supreme Court |
| | On Appeal from |
| v. | Superior Court, Washington Unit, Civil Division |
| State of Vermont, Department of Corrections and Department of Human Services | June Term, 2015 |

Helen M. Toor, J.

Emily J. Joselson, Kevin E. Brown and Katherine B. Kramer of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiffs-Appellants Silloway and Bertrand, and Karen L. Richards, Executive Director, Montpelier, for Plaintiff-Appellant Vermont Human Rights Commission.

William H. Sorrell, Attorney General, and David Groff, Assistant Attorney General, Montpelier, for Defendants-Appellees.

Margaret Martin Barry, Alexander W. Banks and Christina Gongaware (Law Clerk), Vermont Law School, South Royalton, for Amici Curiae Vermont Commission on Women, Vermont Legal Aid, American Association of University Women of Vermont, South Royalton Legal Clinic and League of Women Voters of Vermont.

PRESENT: Reiber, C.J., Dooley, Skoglund and Eaton, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** The Vermont Human Rights Commission and three female employees of the Vermont Department of Corrections (DOC) filed suit against the State—the DOC and the Vermont Department of Human Resources (DHR)—claiming that the DOC violated the Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. §§ 495-496a, by paying a male employee in the same position as the female plaintiffs as much as $10,000 more

annually without a legally defensible, gender-neutral reason.  The trial court granted summary judgment to the State, concluding that although plaintiffs established a prima facie case, the undisputed facts established that the wage disparity was due to legitimate business reasons and not gender-based.  We affirm.

¶ 2.  The undisputed facts presented at summary judgment are as follows.  In July 2010, plaintiff Lynne Silloway, who began state employment in 2002, learned that she was earning approximately $10,000 less annually than her male colleague John Doe.[1]  At the time, both were employed by the DOC as business managers at a state prison.  Two other female business managers, plaintiffs Mary Bertrand and Lisa DeBlois, subsequently also determined that they were being paid less than Doe.  The ensuing investigation into Doe's salary revealed the following.

¶ 3.  Doe began his employment with the DOC in September 2003 after he responded to a notice for a food-service-supervisor position at the soon-to-be opened correctional facility in Springfield, Vermont.  DOC employee Keith Tallon was hired as the first supervisor of the facility, and setting up the facility required him to employ 135 staff members.  The job posting for the food service supervisor position stated that it required a high school diploma or equivalent and four years of experience in volume cooking.

¶ 4.  As a state job, the food-services position was classified as pay grade 18, which at step 1 equated to an hourly wage of $13.65.  The state employee classification system assigns every state job to one of twenty-eight pay grades, labeled 5 through 32.  See 3 V.S.A. § 310(b) (requiring department of human resources "to perform job evaluations for each position based on current job descriptions which describe the nature, scope, and accountabilities for each class of employees").  There are 15 steps within each pay grade, and through seniority and merit

---

[1]  Although not his real name, the male employee has been referred to by the parties as John Doe throughout this litigation for privacy reasons.  We continue that convention in this opinion.

2

increases an individual can advance through the steps. New hires typically start at step 1 unless they are "hired into range." This policy, set forth in the State of Vermont Personnel Policy and Procedure Manual Policy Number 12.2, allows new hires to be compensated above the entry-level rate when there is a "compelling reason to make an exception to the basic principle that employees are hired at the entry rate established for the job." Prior approval is required based on the following justifications:

- There is a shortage of qualified applicants for the position;
- An applicant who has special qualifications, training, or experience that while are not necessarily a requirement of the job, have some unique value to the organization;
- The candidate possesses exceptional and outstanding qualifications that exceed those of other applicants and to such an extent that not hiring that particular employee will be detrimental to the State.

To instigate the hire-into-range process, the affected agency must submit a request to the Department of Human Resources, detailing several items, including information about the candidate, the other applicants, the hiring process and the implications on existing employees or classes.

¶ 5. The DOC received applications from nine individuals who met the minimum qualifications, and interviewed three of them, including Doe. Only one applicant was female, and she did not respond to a request for an interview.

¶ 6. Doe's application reflected the following relevant training and experience: a bachelor's degree in Hotel and Restaurant Administration, an associate's degree in Culinary Arts and Restaurant Management, and twenty-three years of relevant experience. Doe was making an hourly wage of $35.17 in his position as the Director of Environmental Services, Nutrition, Food Services and Laundry at a hospital. Of all the applicants, Doe had the most experience and the most advanced degrees, and he also received the highest interview score.

3

¶ 7.    Superintendent Tallon believed Doe's qualifications exceeded those of the other applicants and sought permission from the DOC's central office to submit a hire-into-range request. Permission was granted, and the superintendent prepared an official hire-into-range request, which was submitted to the Department of Personnel, now the Department of Human Resources.

¶ 8.    The hire-into-range request proposed to hire Doe into step 13 of pay grade 18 at a rate of $19.94 instead of the standard step 1 of pay grade 18 rate of $13.65 per hour. The request supported the increased starting pay with the following explanation and reasons. There were a limited number of applicants. Although there were nine qualified applicants, only three were interviewed for reasons outside of the DOC's control. Doe's qualifications exceeded all of the other applicants insofar as he had two degrees related to food service, and over twenty-three years of experience in the business. Because of the combination of Doe's "extensive work history, education, training, and experience," Doe would bring "unique value" to the correctional facility and it would be "detrimental" to the DOC not to hire him. Even with the hire into range, Doe would be losing almost half of his current rate of pay of $35.17 per hour. Because the new facility was due to open in a month, the new hire would be required to take immediate action to hire, train, and supervise new staff. As a result of this short time frame, the need for a high level of skills and Doe's exceptional qualifications, the request summarized that the hire into range was "absolutely essential." The request did not specifically address the other employees that could be affected by the request or include information about other recent hires in the same or similar classes.

¶ 9.    The request was approved by the personnel department the day after it was submitted. Doe was offered and accepted the position.[2]

---

[2] When Doe started, his salary was higher than the other food-service supervisors at the other correctional facilities. Although the superior court recounted that these other employees were all women, the undisputed facts show that three were male and two were female. Under the

4

¶ 10. During Doe's subsequent years of employment with the DOC, his salary increased pursuant to the terms of the collective bargaining agreement. Doe received scheduled step increases and annual cost of living assessments (COLAs). He also received raises when the food-services position was reclassified. Other individuals in the same position received the same percentage increases in their pay.

¶ 11. With these increases, by August 2006, Doe was at pay grade 20, step 12, with an hourly wage of $23.07. Doe was then placed into the new job of Business Manager A, which was a pay grade 21 position. Because this position entailed supervision, pursuant to the collective bargaining agreement, he received the step increase and an 8% increase in his pay, and consequently was placed in pay grade 21, step 13 with an hourly wage of $25.01. Over the following years, Doe continued to receive scheduled step increases and annual COLAs, when those were provided for state employees. His position was also reclassified several times, which resulted in a 5% raise each time. As of July 2013, Doe was at a pay grade 24, step 13, with an hourly wage of $32.95.

¶ 12. In mid-2006, after Doe first became business manager, he had the same role as plaintiffs Bertrand, Silloway, and DeBlois. At that point, when he had been a state employee for three years, Doe's hourly wage of $25.01 exceeded the plaintiffs' wage rates. Bertrand had been with the state eight years, working as a business manager for seven years, and was earning $21 an hour; Silloway had been with the state four years, a business manager for three years, and was earning $20 an hour; and DeBlois was hired one year earlier, became a business manager forty-five days after Doe, and was earning $18.50 an hour. From 2006 forward, plaintiffs received the same percentage raises as Doe pursuant to reclassifications of their position, COLAs, and step increases. By fiscal year 2012, Doe's annual salary was $58,531. In the same year, Bertrand, Silloway, and DeBlois made between $6,385 and $10,200 less annually than Doe.

collective bargaining agreement, the incumbents' step levels could have been raised to eliminate the pay inequality, but no such action was taken at that time.

¶ 13.   Based on these undisputed facts, the parties filed cross motions for summary judgment.  Plaintiffs argued that they had made a showing of wage discrimination because Doe was receiving a higher wage for the same work and there was no legally defensible reason for the disparity.  The State argued that any wage differential was due to the hire-into-range decision, which was based on legitimate business-related reasons other than gender, and that therefore they had presented an affirmative defense.  The trial court concluded that plaintiffs had made a prima facie case of discrimination under the VFEPA.  The court further concluded, however, that the DOC met its burden of demonstrating an affirmative defense because the hire-into-range decision was based on bona fide reasons other than gender, including Doe's work history, education, and prior salary, and the DOC's exigent need; and granted summary judgment to the State.  Plaintiffs appeal.

¶ 14.   Summary judgment is appropriate where the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).  On appeal, this Court employs the same standard as the trial court.  White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999).  To determine whether there is a disputed issue of material fact, the allegations made by the nonmoving party are accepted as true "so long as they are supported by affidavits or other evidentiary material."  Id.

I.  Legal Backdrop

¶ 15.   The complaint in this case alleges that the State violated the Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. §§ 495-496a, by engaging in gender-based wage discrimination.  As the Legislature recently found, although pay inequity has been illegal since 1963, gender discrimination through pay inequity "remains a persistent problem" in Vermont, and Vermont women earn "roughly 84 cents per dollar earned by men."  2013, No. 31, § 1(2).  VFEPA prohibits an employer from discriminating between employees "on the basis of sex by

6

paying wages to employees of one sex at a rate less than the rate paid to employees of the other sex for equal work that requires equal skill, effort, and responsibility and is performed under similar working conditions." Id. § 495(a)(7); see Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 41 n.8, 176 Vt. 356, 848 A.2d 310 (setting forth prima facie case requirements). An employer may pay different wages when the difference is made pursuant to:

> (i) A seniority system.
> (ii) A merit system.
> (iii) A system in which earnings are based on quantity or quality of production.
> (iv) A bona fide factor other than sex. An employer asserting that differential wages are paid pursuant to this subdivision shall demonstrate that the factor does not perpetuate a sex-based differential in compensation, is job-related with respect the position in question, and is based upon a legitimate business consideration.

21 V.S.A. § 495(a)(7)(A). The employee then has the opportunity to present evidence showing that the proffered legitimate basis is pretextual. Ballard v. Univ. of Vt., 166 Vt. 612, 614-15, 693 A.2d 713, 716 (1997) (mem.).

¶ 16. In 2012 when plaintiffs filed suit, the statute contained the same first three exceptions, but the fourth exception read simply "Any factor other than sex." 21 V.S.A. § 495(a)(8)(A)(iv) (2009). This language was similar to the existing, analogous provision in the federal equal pay act that allows pay differentials based on a "factor other than sex." 29 U.S.C. § 206(d)(1)(iv). This language has been variously interpreted by different federal courts of appeal. Some federal courts have concluded that to properly assert a defense under the "factor other than sex" exception an employer must demonstrate "that a bona fide business-related reason exists for using the gender-neutral factor." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 526 (2d Cir. 1992); see EEOC v. J.C. Penney Co., 843 F.2d 249, 253 (6th Cir. 1992) (explaining that statute requires that factor be "adopted for a legitimate business reason"); Kouba v. Allstate Ins. Co., 691 F.2d 873, 876 (9th Cir. 1982) ("An employer thus cannot use a factor which causes a wage differential between male and female employees absent an acceptable

7

business reason."). Other courts have held that the employer does not have a burden of demonstrating that the reason is related to a legitimate business goal. See Wernsing v. Dep't of Human Servs., 427 F.3d 466, 469-70 (7th Cir. 2005) (recognizing difference between its own jurisprudence that "factor other than sex" need not be business related and other circuits that require showing of acceptable business reason); Lissak v. United States, 49 Fed. Cl. 281, 285 (2001) (recognizing split in circuits).

¶ 17. In 2013, VFEPA was amended and the final exception was rewritten with the language quoted above. 2013, No. 31, § 2. Because the conduct at issue took place prior the amendment, the pre-2013 version of the statute would apply. See 1 V.S.A. § 214(b) (explaining that amendment of statute does not operate prior to effective date). Before the superior court, the parties disagreed over whether the 2013 amendment was a change in the law or a clarification of the law codifying requirements that were already encompassed by the prior language. The State contended that its defenses met the higher standard set forth in the revised statutory language and therefore did not object to the court applying the new language. The court analyzed the State's defense based on the 2013 revised language. On appeal, the parties all apply the new language.[3] We conclude that the State's proffered defense meets the higher standard, and therefore we do not address the question of whether the prior version of the Vermont statute required a showing that the factor other than sex did not perpetuate sex-based wage disparity, was job-related, and amounted to a legitimate business interest.

¶ 18. The Vermont statute is modeled on the Federal Equal Pay Act, 29 U.S.C. § 206(d), which was passed "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999); see Lavalley v. E.B. & A.C. Whiting Co., 166 Vt. 205, 209,

_____

[3] We note that although on appeal the parties agree to application of 2013 version of the statute, it is for this Court, not the parties to determine which law applies to the conduct at issue in this case.

692 A.2d 367, 369 (1997) (explaining that VFEPA is patterned on federal law). Similar to its Vermont analog, to establish a prima facie case under the federal equal pay act, a plaintiff must establish that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). A claim under the equal pay act does not require proof of discriminatory intent. Ryduchowski v. Port Auth. of N.Y. & N.J., 203 F.3d 135, 142 (2d Cir. 2000).

¶ 19. Like Vermont's statute, once a prima facie case is established, the burden shifts to the employer to establish one of four affirmative defenses contained in the statute. Belfi, 181 F.3d at 135. These are that the difference in payment is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The employer carries the burden of persuasion, not just production, in asserting its defense. Corning Glass, 417 U.S. at 197. An employee may rebut the employer's affirmative defense "with evidence that the employer intended to discriminate, and that the affirmative defense claimed is merely a pretext for discrimination." Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986). Because Vermont's statute is based on its federal counterpart, this Court may consider federal decisions as persuasive authority.

¶ 20. When an affirmative defense is asserted at summary judgment, the employer must demonstrate "that there is no genuine issue as to whether the difference in pay is due to a factor other than sex." Buntin v. Breathitt Cnty. Bd. of Educ., 134 F.3d 796, 800 (6th Cir. 1998). That is, the undisputed facts must show that the difference in pay is due to legitimate, nongender-based reasons and no rational jury could find to the contrary. Id. at 799-800 (explaining that where defendant moves for judgment as matter of law, equal pay act plaintiff need not set forth

9

evidence that proffered reason is pretext, rather defendant must show that record establishes defense "so clearly that no rational jury could have found to the contrary" (quotation omitted)).

¶ 21. Here, both parties agree that the undisputed facts demonstrate that plaintiffs have established a prima facie case under the statute. Plaintiffs, all female, perform similar work as Doe and work under similar conditions, yet Doe, who is male, receives higher compensation. 21 V.S.A. § 495(a)(7) (establishing elements of violation of unfair employment practice); see Belfi, 191 F.3d at 135 (setting forth prima facie case requirements under federal equal pay act).

¶ 22. The question is whether the DOC presented evidence to establish an affirmative defense as a matter of law. The court concluded that the State met its burden of demonstrating that Doe's higher pay resulted from a "bona fide factor other than sex." 21 V.S.A. § 495(a)(7)(A)(iv). The court explained that Doe's relatively higher salary could be traced to the hire-into-range decision in 2003, which resulted in Doe beginning his state employment at a higher-than-average pay grade. The court concluded that because the undisputed facts showed that Doe's starting salary did not perpetuate a sex-based wage differential, was for reasons related to his job, and was based on legitimate business considerations, the DOC proved its defense as a matter of law.

¶ 23. On appeal, plaintiffs raise several arguments as to why this conclusion is incorrect, including that the court improperly shifted the burden of proof onto plaintiffs, failed to construe evidence in a light most favorable to them, and improperly analyzed Doe's 2006 promotion to business manager.

## II. Affirmative Defense

¶ 24. We begin by analyzing the State's proffered affirmative defense that the difference in wages was due to a "bona fide factor other than sex." 21 V.S.A. § 495(a)(7)(A)(iv). The parties agree that the difference between plaintiffs' and Doe's wages stems from the hire-into-range decision, which resulted in him starting his state employment at an increased rate of

pay. However, not all wage disparities equate to pay inequity. We agree with the federal courts that have examined this issue and conclude that an existing salary differential stemming from unequal starting salaries does not violate the equal pay act as long as the inequity is justified by one of the four statutory exceptions. Hein v. Or. Coll. of Educ., 718 F.2d 910, 920 (9th Cir. 1983). "In other words, salary differentials based on unequal starting salaries do not violate the Equal Pay Act if the employer can show that the original disparity was based on a legitimate factor other than sex." Id. Therefore, the higher starting salary is justified if the "disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business." Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1571 (11th Cir. 1988), cert denied, 488 U.S. 948 (1988). The factor causing the wage differential must be based on an "acceptable business reason," but a "business policy is not prohibited simply because a wage differential results." Kouba, 691 F.2d at 876; see Warren v. Solo Cup Co., 516 F.3d 627, 630 (7th Cir. 2008) (explaining that employer's defense of gender-neutral factor must be "used and applied in good faith" (quotation omitted)); Beck-Wilson v. Principi, 441 F.3d 353, 365 (6th Cir. 2006) (requiring defendant asserting affirmative defense to equal-pay allegation to demonstrate that pay disparity resulted from factors other than sex adopted " 'for a legitimate business reason' " (quoting J.C. Penney Co., 843 F.2d at 253)).

¶ 25. Here, the DOC presented evidence to demonstrate that Doe's higher starting salary was justified based on his relevant education and extensive related experience, and business exigencies existing at the time, and that these considerations were job-related, legitimate, and did not perpetuate sex-based wage disparity. See 21 V.S.A. § 495(a)(7)(A) (explaining that employer asserting bona fide reason other than sex must demonstrate "that the factor does not perpetuate a sex-based differential in compensation, is job-related with respect to the position in question, and is based upon a legitimate business consideration"); Joyner v. Town

11

of Elberta, 22 F. Supp. 3d 1201, 1208 (S.D. Ala. 2014) (concluding that pay differential was justified by prior pay and superior experience of male employee and granting summary judgment).

¶ 26.    Both education and experience are valid considerations.  See Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995) (explaining that employer may consider factors such as characteristics of job, individual's experience, training, or ability or "special exigent circumstances connected with the business" (quotation omitted)).  Education and training have long been accepted as valid considerations other than sex that can justify a wage differential. See Warren, 516 F.3d at 630 (concluding that employer established bona fide, gender-neutral reason for wage discrepancy in that male employee was more skilled and had more education). Courts have cautioned, however, that a wage differential based on education is not justified where the employer does not derive any benefit from the increased qualifications, or where the education is not related to the position.  See EEOC v. First Citizens Bank, 758 F.2d 397, 401 (9th Cir. 1985) (concluding that male employee's higher salary did not fall within exception to equal pay act where male employee's college education was "only marginally related to the job" and did not make him more qualified than female employee with some college education plus three years' experience); Bullock v. Pizza Hut, Inc., 429 F. Supp. 424, 430 (M.D. La. 1977) (explaining that college education did not justify higher salary of male employee where there was no showing that college education was prerequisite to employment or that employer derived benefit from additional education).

¶ 27.    In addition, an employee's prior experience is a factor "other than sex" that can justify a pay disparity.  Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1312 (10th Cir. 2006). To demonstrate that such reason explains the disparity as a matter of law, an employer must demonstrate that the different salaries are correlated to the employees' experience.  See Tolliver

v. Children's Home-Chambliss Shelter, 784 F. Supp. 2d 893, 906 (E.D. Tenn. 2011) (explaining that employer must articulate reason that logically accounts for disparate salaries).

¶ 28. Here, the undisputed facts demonstrate that Doe had extensive education and experience, that this was both related to the position and a legitimate consideration, and that at the time of the request the DOC relied on both of these considerations in requesting a higher-than-usual starting salary for Doe. Doe had two degrees in fields related to the position: a bachelor's degree in Hotel and Restaurant Management, and an associate's degree in Culinary Arts and Restaurant Management. Doe also had extensive prior experience in the food-service industry. He had over twenty-three years of experience in food-service positions, some of which required organizational duties, including responsibility for operational tasks, such as setting menus, ordering supplies, managing personnel, interacting with the public, enforcing sanitary practices, bookkeeping, and operating under a budget.

¶ 29. These reasons were not only proffered by the State in the context of this litigation, but the contemporaneous evidence shows that these considerations actually motivated the DOC at the time to request the higher salary for Doe. Contemporaneous evidence is the most effective means to demonstrate that the employer's proffered reasons for providing a higher starting salary was the actual reason for the decision at that time. See Mickelson, 460 F.3d at 1312 (explaining that employer failed to demonstrate that wage disparity at hiring was due to male employee's prior experience where employer did not produce contemporaneous evidence of how male employee's starting salary was set); Chang v. Univ. of R.I., 606 F. Supp. 1161, 1230 (D.R.I. 1985) (concluding that employer's "post-event rationalizations" were insufficient to justify initial higher salary for male employee).

¶ 30. The DOC hire-into-range request accounted for these considerations in a reasonable and rational manner. To compensate for his twenty-three years of experience, Doe was hired at a step 13, a level that would normally take 18.5 years to attain. The salary placed

him just above the then most-senior food services specialist who had sixteen years of DOC experience, including six years in food service. In addition, Doe's two educational degrees were superior to the other existing food services specialists, only one of whom had a related degree. See Blackman v. Fl. Dep't of Bus. & Prof. Reg., 599 F. App'x 907, 912 (11th Cir. 2015) (holding that male employee's years of experience and education in accounting and business administration sufficiently demonstrated salary differential was based on factors other than gender).

¶ 31.   Further, the DOC at the time based its request for a higher salary on its unique business need related to the opening of a new correctional facility. A wage differential is due to a bona fide factor other than sex if it is based on "special exigent circumstances connected with the business." Ponamgi v. Safeguard Servs., LLC, 558 F. App'x 878, 880 (11th Cir. 2014) (explaining that to meet burden of demonstrating that difference in wages is caused by factor other than sex employer can rely on special exigent circumstances of business). Here, the DOC requested the hire-into-range based on its need to timely and efficiently have the new facility's food service functions operational. The DOC explained that immediate and efficient actions were required in terms of hiring and training employees, planning and organizing for delivery of food services to 350 inmates and additional 135 staff. This type of exigency is a proper consideration.

¶ 32.   On appeal, the State contends that Doe's prior salary also provides a nondiscriminatory reason for the hire-into-range decision. Salary matching has been recognized by some courts interpreting the federal equal pay act as a bona fide business-related factor. See Engelmann v. Nat'l Broad. Co., Inc., No. 94 CIV. 5616, 1996 WL 76107, at *10 (S.D.N.Y. Feb. 22, 1996) (explaining that salary matching provides valid reason for wage difference). Other courts have recognized that the use of a prior salary as part of an employer's affirmative defense can be problematic in that it "can easily be used to capitalize on the unfairly low salaries

14

historically paid to women." Kouba, 691 F.2d at 876; see Irby, 44 F.3d at 955 (explaining that use of prior salary as exception can perpetuate inequality of pay among genders and refusing to rely solely on prior salary as justification for pay disparity); Glenn, 841 F.2d at 1571 (rejecting assertion that prior salary can be "factor other than sex" under federal equal pay act). For two reasons, we need not and do not reach the issues of whether a prior salary is a valid reason to support a wage differential and, if so, whether it was an appropriate consideration in this case. First, salary matching was not proffered by the DOC as a reason for the higher salary at the time it submitted its hire-into-range request. Although the DOC noted Doe's rate of pay at his former job and explained that even with the hire-into-range Doe would be taking a significant pay cut, the DOC did not attempt to justify the increased wage on that basis. Second, it is not necessary to consider whether salary matching could justify the disparity because the other reasons—Doe's relevant experience and education and the DOC's urgent need for a qualified food services specialist—are enough to support the DOC's defense that Doe's higher than average starting salary was supported by a gender-neutral justification.

### III.  Burden of Proof

¶ 33.    Plaintiffs argue that the DOC's proffered reasons are insufficient to show that the hire-into-range decision was based on a bona fide factor other than sex as a matter of law. Plaintiffs contend that in ruling for the State, the trial court incorrectly shifted the burden of proving the absence of an affirmative defense onto plaintiffs. Plaintiffs rely on the following language in the trial court decision

> While the evidence does not show any real consistency in how prior experience and relevant degrees are credited, it also does not show that crediting Doe's prior experience and educational background perpetuated any kind of sex-based pay disparity in existence in the [food service supervisor] position prior to his hire.

15

Plaintiffs contend that this statement shows that the court effectively required plaintiffs to prove that the decision was sex-based, rather than burdening the State with showing that its decision was supported by a legitimate reason other than sex.

¶ 34. When viewed in its entirety, the decision reveals that the court applied the proper burden of proof. The court explained that following the establishment of plaintiffs' prima facie case, the burden rested on the State as the employer to prove that the wage disparity was not sex linked. The court also explained that once this burden had been met, plaintiffs could offer evidence that the proffered justification was pretext, but underscored that this did not shift the burden of proof. In assessing the validity of the DOC's proffered reason for the pay differential—that Doe was paid more at hire due to his experience and education and the then-existing exigent business needs—the court evaluated these reasons according to the three requirements provided in the statute: "[T]he factor does not perpetuate a sex-based differential in compensation, is job-related with respect the position in question, and is based upon a legitimate business consideration." 21 V.S.A. § 495(a)(7)(A)(iv). It was in the context of examining the first of these requirements that the court made the observation that the evidence did not show that "crediting Doe's prior experience and educational background perpetuated any kind of sex-based pay disparity in existence in the [food services specialist] position prior to his hire." The court explained that the evidence demonstrated Doe's starting salary was slightly above the incumbent food-services employees, which included both males and females, and none with as much experience or education as Doe. Therefore, the court concluded that Doe's hiring salary did not perpetuate any gender-based wage difference. This was a valid consideration and did not improperly shift the burden onto plaintiffs.

¶ 35. Moreover, the court's reference to the fact that the hire-into-range policy may have been applied inconsistently was not, as plaintiffs paint it, an acknowledgement that there were conflicting facts on the question of whether the wage disparity arose from a factor other

16

than sex. To the contrary, the undisputed evidence showed the wage disparity stemmed from legitimate business considerations, like Doe's experience and education and the DOC's exigent need. The court's comment about inconsistency referred to evidence showing that not all new food services employees with relevant experience or related degrees were offered an increased starting salary through a hire-into-range request. When Doe was hired, there were five incumbent food service supervisors; of these, two had some experience or education prior to hire. One was a male, who had three years of food experience and one related degree. The other was a female, who had eleven to fourteen years of experience prior to hire into state employment. In both cases, the new employees started at step 1.

¶ 36. This evidence fails to demonstrate that the DOC did not rely on a bona fide reason other than sex to support the request for an increased step level for Doe. It does not even conclusively show that the hire-into-range policy was not consistently used when it was applicable. The hire-into-range policy is limited to particular circumstances and there is not enough information to assess whether the conditions existing at the time those employees were hired met those conditions. Further, this evidence fails to establish that any inconsistency is sex-based.[4]

IV. Perpetuation of Sex-Based Differential in Compensation

¶ 37. Similarly, the court's reasoning does not reflect that it improperly interpreted the statutory requirement that an employer asserting that differential wages are due to a bona fide factor other than sex must "demonstrate that the factor does not perpetuate a sex-based differential in compensation." 21 V.S.A. § 495(a)(7)(A)(iv). Plaintiffs argue that the statutory requirement is met if the hiring at issue creates a pay disparity. The State interprets the statute as

---

[4] The general evidence submitted in support of summary judgment also reflects that the hire-into-range policy was not used a tool for sex-based discrimination insofar as it was used to hire applicants of both sexes. Within the DOC, from 2000 to 2010, there were twenty-nine women and nineteen men hired into range.

requiring that a sex-based pay disparity exists in that workplace prior to the hire at issue because it claims that a disparity cannot be perpetuated if one does not already exist.

¶ 38. In addressing these arguments, we recognize that because women have historically been paid less than men the use of certain factors in setting employee salaries may tend to perpetuate these existing wage disparities. For example, factors identified by other courts that tend to perpetuate wage disparity are wage negotiation and salary matching. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1462 (7th Cir. 1994) (cautioning against use of negotiation to provide reason for male employee's higher salary since "existing wage disparity may serve to perpetuate differentials that ultimately may be linked to sex"); Arthur v. Coll. of St. Benedict, 174 F. Supp. 2d 968, 977 (D. Minn. 2001) (explaining that employer may not use employer's prior rate of compensation to justify disparate salaries if it perpetuates past discrimination). Under a different set of circumstances, the use of such factors may demonstrate perpetuation.

¶ 39. In this case, however, we conclude that even if the most recent version of the statute did apply there was no showing of perpetuation. There is no support in the statutory language for plaintiffs' contention that if a hire results in a male being paid more than a female then a sex-based wage differential is perpetuated, and the reason is not bona fide. To interpret the statute in this manner would effectively nullify the entire exception. See Kouba, 691 F.2d at 876 ("[A] factor used to effectuate some business policy is not prohibited simply because a wage differential results.").

¶ 40. Further, we need not decide, as the State contends, whether the statute requires a specific showing that a wage disparity already exists in the particular business involved or whether the statute could be referring to use of a factor that generally tends to perpetuate salary differences between male and female workers. Here, there is no evidence to demonstrate that Doe's hire and the factors considered as part of the hire-in-range process—experience, education, and business needs—perpetuated wage differentials generally. The evidence also

18

does not show that the hire perpetuated wage disparity within the DOC insofar as Doe's higher starting salary was not higher than any female incumbent with similar work history or education.

## V. Compliance with Hire-in-Range Policy

¶ 41. Plaintiffs also argue that because VFEPA is a strict liability statute, the State's imperfect compliance with the hire-into-range process amounted to liability as a matter of law. The State contends that any failure to perfectly comply with the terms of the hire-into-range policy was not material and certainly not sex-based. To understand this argument requires some explanation of the hire-into-range policy. The policy is applicable in "rare circumstances," which justify making an exception to the general rule that new hires begin at step 1 within their pay grade. These reasons include that the candidate "has special qualifications, training, or experience" and "possesses exceptional and outstanding qualifications that exceed those of other applicants and to such an extent that not hiring that particular employee will be detrimental to the State." The policy requires the Department of Human Resources (then titled the Department of Personnel) to approve a request and to consider several factors in its decision, including the salary market for that type of expertise, the impact of the vacancy, the impact on incumbents "with similar qualifications," and the candidate's current rate of compensation. To start the process, the requesting agency submits a request, which includes a set list of information, including the applicant's qualifications, and a narrative describing the qualifications of other applicants and other staff serving in the same class. The request is also supposed to include information about the hiring process and the hiring implications for other employees that will be potentially affected by the hire-into-range decision.

¶ 42. Consistent with this instruction, Superintendent Tallon submitted the hire-into-range request, detailing the qualifications of Doe and the other applicants, and explaining the facility's urgent need. He appended Doe's application and a chart listing all of the applicants for the position, and their qualifications. He did not, however, specifically compare Doe's

qualifications to the other state employee who applied and did not specifically set forth the impact on incumbents.

¶ 43. Based on these facts, plaintiffs allege the DOC hire-into-range request violated 3 V.S.A. § 327(a), which states that, when there is a vacancy in a classified position, "the appointing officer shall make a diligent effort to recruit an employee from within the classified service to fill the vacancy." Plaintiffs assert that this statute required the DOC to expressly compare Doe to the other qualified applicant, a male, who was already employed by the state, and there was no such comparison in the hire-into-range request. There is no support for plaintiffs' contention that the statute applies here. The plain language of the statute speaks to efforts to "recruit," it does not direct the hiring process. To the extent there was evidence about recruitment, plaintiffs themselves assert that Superintendent Tallon asked the then-most senior incumbent food-services supervisor to apply for the Springfield position, but she declined.

¶ 44. Even assuming that the DOC did not make efforts to recruit, plaintiffs fail to articulate how this has any relevance to the issue of whether the DOC's decision to give Doe a higher-than-usual starting salary was justified by legitimate business reasons. Plaintiffs do not allege that the hiring process itself was discriminatory and do not dispute the fact that Doe's qualifications were superior to those of all the other applicants, including the male incumbent. Therefore, plaintiffs fail to demonstrate anything other than that the hire-into-range was based on legitimate business interests.

¶ 45. Plaintiffs also argue that they presented sufficient evidence to create questions of fact regarding whether the reasons proffered by the State, and relied upon at the time, for the hire-into-range decision were valid. Specially, plaintiffs allege that there were disputes of fact concerning whether there was a limited applicant pool and whether an exigency existed at the time of the hiring. On both issues, plaintiffs did not dispute the facts presented by the State; rather, plaintiffs assert that these facts lead to a different conclusion than that reached by the

20

DOC. As to the application pool, the hire-into-range request explains that nine qualified applications were received, and of those, three were interviewed. The remaining six were not interviewed for reasons beyond the DOC's control.[5] Plaintiffs did not contest these facts at summary judgment. Plaintiffs' disagreement with the DOC's assessment of these facts does not create a dispute of fact. When an employer relies on a policy to explain its defense to an equal pay act violation, it must demonstrate that the policy was "used reasonably." Belfi, 191 F.3d at 139. Therefore, it is a question of law whether the facts indicate that the policy was implemented reasonably. Here, it was reasonable for the State to interpret three applicants as a "shortage of qualified applicants for the position."

¶ 46. Similarly, it is a legal question whether the DOC's determination that failing to hire Doe would be "detrimental to the State" within the meaning of the policy was reasonable. Plaintiffs admitted the following facts below: a successful food service operation at the new facility needed to be in place, and immediate action was necessary to start the facility's kitchen operations; the DOC believed Doe had the unique qualifications to perform needed operational and logistical processes to make kitchen operational; superintendent Tallon believed that Doe would bring unique value to the DOC; and the contemporaneous reasons proffered at the time were the actual reasons motivating the request. Based on these facts, it was also reasonable for the State to determine that the requirements of the hire-into-range policy were met because Doe had special qualifications and not hiring him would be "detrimental to the State."

¶ 47. To the extent that plaintiffs are claiming it was a poor business choice to conclude that there was exigency or that a pool of three interviewed candidates was a "limited" pool, this argument goes beyond the scope of the VFEPA. Essentially, plaintiffs seek to show that the DOC's decision to hire Doe was not a good business decision because the circumstance was not

---

[5] One candidate did not respond to a telephone call request for an interview, one failed to show up for the interview, two were no longer interested in the position, one application was received after interviews were held, and one was ineligible due to criminal conduct.

as exigent as perceived by the DOC and there were other means to deal with the need. Plaintiffs proffer that the DOC could have instead hired someone less qualified for less money or borrowed an employee from another facility. Plaintiffs argue that given these alternate possibilities, they have presented disputed issues of fact sufficient to withstand summary judgment.[6] The issue is not, however, whether the DOC made the best business choice in choosing to hire Doe and to submit a hire-into-range request. See Kouba, 691 F.2d at 876 (explaining that federal equal pay act "entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives"); see also Washington Cty. v. Gunther, 452 U.S. 161, 170-71 (1981) (stating that equal pay act does not permit court to substitute its judgment for that of employer, which establishes bona fide job rating system "so long as it does not discriminate on the basis of sex"). The issue is whether the DOC has submitted evidence to show that the hire-into-range request was based on legitimate business considerations. Plaintiffs do not dispute the facts that Doe had more experience and more advanced degrees than the other applicants and received the highest interview score. Plaintiffs also do not dispute that the hire-into-range request was based on these legitimate factors, that Superintendent Tallon's believed it would be detrimental to the DOC not to hire Doe given his

---

[6] Along this same vein, plaintiffs also contend that they presented evidence that prior to publicly posting the food-services supervisor position, Superintendent Tallon asked the then-most-senior food-services supervisor, who was a female, to take the job, but did not offer her a salary increase, so she did not apply. According to plaintiffs this evidence required the court to infer that if that supervisor had been offered a rate of pay commensurate with what was offered to Doe, she would have accepted the position. This conclusion goes far beyond the Rule 56 requirement to construe facts in favor of the nonmoving party. The claim in this case is not discrimination in hiring, but discrimination based on unequal pay. The only relevance of this other employee and her credentials would be to demonstrate that the hire-in-range policy was not used in hiring female applicants and therefore was used as a pretext for discrimination. The evidence cannot be construed in this manner, however, because this supervisor did not actually apply for the position. It is mere speculation therefore whether if she did apply, she would have been offered the position and, if so, at what salary.

qualifications, and that there was a short time available to accomplish necessary tasks.[7]  These facts are sufficient to support the State's position.

¶ 48.    Plaintiffs also argue that the DOC's request failed to comply with the requirements of the hire-into-range policy because the DOC did not include all of the elements listed in the policy.[8]  Specifically, plaintiffs contend that the request was deficient because it failed to list the qualifications of staff serving in the same class as the prospective candidate, and did not include a "hiring certificate," a specific list of state employees who applied for the position, or information about the turnover/vacancy data for the position.

¶ 49.    When an employer justifies a salary differential based on an employment policy, the employer must demonstrate that the policy is "used reasonably in the case at hand, in light of the employer's stated purpose for the policy and in light of the employer's other practices." Klein v. N.Y. Univ., 786 F. Supp. 2d 830, 851 (S.D.N.Y. 2011) (quotation omitted). "[I]nadvertent mal-administration of a bona-fide personnel policy . . . does not in and of itself make the policy any less legitimate." Lissak v. United States, 49 Fed. Cl. 281, 286 (2001).

---

[7]  Plaintiffs contend that the State erred by relying on subjective evidence to show that hiring Doe at an increased pay level was for a legitimate business reason.  The employer's subjective reasoning is important, however, when an employer claims an affirmative defense. An employer asserting an affirmative defense to an equal pay claim must demonstrate not just that a legitimate reason could explain a difference in pay, but also that the proffered nondiscriminatory reason actually motivated the wage disparity.  See Stanziale v. Jargowsky, 200 F.3d 101, 107-08 (3rd Cir. 2000) (explaining that where employer seeks summary judgment in an equal pay act claim, "they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains" (emphasis added)).  The State submitted evidence to demonstrate both that the reasons it relied upon—Doe's experience, education, the business exigency—were legitimate reasons unrelated to sex and that those were the reasons actually relied upon at the time.

[8]  Personnel policies issued by the State do not have the force and effect of law.  As a separate policy explains, the policies are intended to give "general guidance" regarding practice and procedure, but do not create a contract with employees.  See State of Vermont, Dep't of Human Resources, Policy Manual Administration No. 1.0 (rev. Aug. 4, 2008), http://humanresources.vermont.gov/sites/dhr/files/Documents/Policy%20Manual/Number%201. 0%20-%20POLICY%20MANUAL%20ADMINISTRATION.pdf   [https://perma.cc/N8YA-5B5G].

¶ 50.   Plaintiffs' assertions show that the hire-into-range policy was not followed exactly, but fail to show either that the policy was applied unreasonably or inconsistently with its terms or that any shortcomings resulted in a process based on a "bona fide factor other than sex." 21 V.S.A. § 495(a)(7)(A)(iv).   The stated purpose of the hire-into-range policy is to provide a mechanism to hire candidates when there is a shortage of applicants, when an applicant has special qualifications, or when an applicant possesses unique credentials exceeding other applicants.  The DOC relied on all of these reasons and provided a sufficient basis for each.  Any failure to perfectly comply with the policy did not invalidate the fact that the State relied on non-sex-related and legitimate considerations in making the hire-into-range decision, including Doe's experience and education and the unique business needs existing at the time.

VI.  Business Manager Promotion

¶ 51.   Plaintiffs next contend that a disputed question of fact existed as to whether the decision to make Doe a Business Manager in 2006 was a promotion or a new hire.  Plaintiffs allege that Doe was hired within the meaning of the collective bargaining agreement, and therefore the DOC had the ability to raise the salaries of other business managers pursuant to a section of the agreement, which allows an agency to raise the salaries of incumbents when a new employee is started above step 1 through a hire-into-range process.  This section does not apply when an existing employee is promoted.

¶ 52.   No dispute of material fact exists because the issue of whether Doe's shift to Business Manager was a new hire within the meaning of the collective bargaining agreement is a question of law not fact.  Therefore, it is a determination properly made at the summary judgment stage.  We agree with the trial court that "hire" means to enlist a person not previously employed by the employer.  Contract terms, including those in the collective-bargaining context, are interpreted according to the plain meaning of the terms used.  In re Cole, 2008 VT 58, ¶ 19, 184 Vt. 64, 954 A.2d 1307.  In addition, the terms of a contract "must be viewed in their entirety

24

and read together." Id. (quotation omitted). Here, the contract allows the matching of salaries when the Department of Human Resources has "hire[d] employees above the end of probation rate for their class." Given the reference to the probationary period, and the common meaning of the term hire, the plain meaning of this sentence indicates that it applies when someone becomes a state employee for the first time, and excludes existing state employees who move into different roles. This interpretation is also supported by language elsewhere in the collective-bargaining agreement, designating that an employee "who moves" to a supervisory position should receive an 8% increase in pay. To describe the shift in role, the agreement uses the word "moves" rather than "hire." Therefore, under the language of the agreement, Doe's movement to business manager was a promotion, not a new hire, and the provision allowing the raising of incumbents' salaries did not apply.

¶ 53. Plaintiffs argue that the trial court failed to analyze whether Doe's promotion to business manager was justified by one of the statutory exceptions. The court sufficiently analyzed this issue, concluding that the increases in Doe's salary, including the one connected to his promotion, were for a bona fide reason other than sex, namely the State's merit and seniority policies. The undisputed evidence demonstrates that the increases in Doe's salary, including COLAs, steps, reclassifications, and promotions, were all made pursuant to the terms of the collective bargaining agreement.[9] See EEOC v. Aetna Ins. Co., 616 F.2d 719, 725 (4th Cir. 1980) (noting that an employer's classification or merit system can justify salary differential). Under this agreement, employees are due increases based on merit and seniority and, when a state employee is transferred or promoted, the employee is entitled to retain their salary at a minimum. Employment policies providing for salary retention or for longevity increases are valid considerations to justify a wage disparity. See Puchakjian v. Twp. of Winslow, 804 F. Supp. 2d 288, 298 (D.N.J. 2011) (holding that yearly increase given to all employees was valid

---

[9] Plaintiffs do not contend that Doe did not deserve the promotion, only that the wage he received upon being promoted created a wage disparity between him and themselves.

reason for wage disparity). Plaintiffs did not dispute below that these policies were applied equally to plaintiffs and Doe. Although these percentage increases necessarily caused the gap between Doe's and the plaintiffs' salaries to widen, the increases themselves were based on legitimate factors and not improper. See Riordan v. Kempiners, 831 F.2d 690, 699 (7th Cir. 1987) (explaining that male employee's higher salary following raise at promotion was for valid nondiscriminatory reason because civil service rules entitled him to raise and his initial salary was established for nondiscriminatory reasons); Christiana v. Met. Life Ins. Co., 839 F. Supp. 248, 253-54 (S.D.N.Y. 1993) (holding that company salary retention policy of allowing employees to maintain salary upon different appointment within company was legitimate defense under equal pay act where it was related to legitimate nongender business goals of rewarding longevity of service and avoiding expense of searching for and training new employees). Because Doe's initial classification was based on legitimate business considerations connected to his employment and not perpetuating discrimination and because the subsequent increases he received were pursuant to legitimate policies, the State successfully demonstrated an affirmative defense. Therefore, summary judgment was properly granted to the State.

Affirmed.

FOR THE COURT:

_____

Associate Justice

26